FILED

2008 Aug-28  AM 11:22
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | |
|---|---|
| **MARGARET DALY,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **vs.** | ) |
| | ) |
| | ) **Civil Action No. 06-S-2064-NE** |
| **AETNA LIFE INSURANCE** | ) |
| **COMPANY, d/b/a AETNA LIFE** | ) |
| **AND CASUALTY COMPANY** | ) |
| **and/or TRAVELERS CASUALTY** | ) |
| **AND SURETY COMPANY,** | ) |
| | ) |
| **Defendant.** | ) |

## MEMORANDUM OPINION

This is an action for the recovery of long-term disability insurance benefits filed by plaintiff, Margaret Daly, against her insurer, defendant Aetna Life Insurance Company ("Aetna").[1]  Plaintiff, a former employee of Saint Barnabas Health Care System ("Saint Barnabas"), commenced this action in the Circuit Court of Madison County, Alabama.[2]  Plaintiff asserted claims of breach of contract based on the allegation that "she has been shorted benefits from an Aetna Long Term disability

---

[1] *See* doc. no. 1 (Notice of Removal), Ex. A (State Court Complaint).

[2] *Id.*

policy."[3]   Plaintiff prayed for compensatory damages calculated at the rate of

$821.53 a month since 1991, and other damages, including punitive damages.[4]

Aetna, the sole defendant, timely removed the action to this court, relying

principally upon federal question jurisdiction pursuant to 28 U.S.C. § 1331 and the

Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et*

*seq.*[5]   Defendant further relied on diversity jurisdiction pursuant to 28 U.S.C. §

1332(a)(1).[6]   The action now is before the court on Aetna's motion for summary

judgment.[7]   Upon consideration of the pleadings, evidentiary submissions, and

briefs, the court concludes the motion should be granted.

## I.  STANDARD OF REVIEW

Federal Rule of Civil Procedure 56 indicates that summary judgment "should

be rendered if the pleadings, the discovery and disclosure materials on file, and any

affidavits show that there is no genuine issue as to any material fact and that the

---

[3] *Id.*

[4] *Id.*

[5] *See* doc. no. 1 (Notice of Removal), *see also* doc. no. 12 (Order denying plaintiff's Motion to Remand) ("Important consequences flow from the court's conclusion that the disability benefit plan is governed by ERISA.  Most notably, as outlined above, ERISA broadly preempts state law. *E.g.*, *Hardy v. Welch*, 135 F. Supp. 2d 1171, 1177 (M.D. Ala. 2000).").

[6] *See* doc. no. 1.

[7] Doc. no. 14.

movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).[8]  "[T]he

plain language of Rule 56(c) mandates the entry of summary judgment, after

adequate time for discovery and upon motion, against a party who fails to make a

showing sufficient to establish the existence of an element essential to that party's

case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*

*v. Catrett*, 477 U.S. 317, 322 (1986).

> In making this determination, the court must review all evidence and make all reasonable inferences in favor of the party opposing summary judgment.

> The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case.  The relevant rules of substantive law dictate the materiality of a disputed fact.  A genuine issue of material fact does not exist unless there is sufficient evidence favoring the nonmoving party for a reasonable [factfinder] to return a verdict in its favor.

*Chapman v. AI Transport*, 229 F.3d 1012, 1023 (11th Cir. 2000) (*en banc*) (internal

quotations and citation omitted) (bracketed text suppled).

---

[8] Rule 56 was recently amended in conjunction with a general overhaul of the Federal Rules of Civil Procedure.  The Advisory Committee was careful to note, however, that the changes "are intended to be *stylistic only*."  Adv. Comm. Notes to Fed. R. Civ. P. 56 (2007 Amends.) (emphasis supplied). Consequently, cases interpreting the previous version of Rule 56 are equally applicable to the revised version.

## II. SUMMARY OF FACTS[9]

### A.    Plaintiff's Relevant Employment History

Plaintiff was employed by Saint Barnabas as a medical assistant from April of 1998 to September of 1998.[10]  She alleged disability as a result of Hepatitis C, and her last day of work at Saint Barnabas was on or about September 26, 1998.[11] Plaintiff's pre-disability earnings at Saint Barnabas were $2,202.22 a month.[12]

---

[9] The Initial Order, Appendix II, provides the following with respect to responses to the statement of facts in a moving party's motion for summary judgment:

> The first section must consist of only a response to the moving party's claimed undisputed facts, and shall contain a specific response to each numbered sentence in the movant's list of claimed undisputed facts.  The response must consist of the word "Admitted," or the word "Disputed," or a short explanatory phrase such as "Admitted but not material," or "Admitted but context clarified in brief."  Any statements of fact that are disputed by the non-moving party must be followed by a specific reference to those portions of the evidentiary record upon which the disputation is based.  *All material facts set forth in the statement required of the moving party will be deemed to be admitted for summary judgment purposes unless controverted by the response of the party opposing summary judgment.*

Doc. no. 4 (Initial Order Governing All Further Proceedings), Appendix II, at *iii-iv* (emphasis in original).  Plaintiff did not controvert Aetna's statement of facts as required by the  Initial Order.  Rather, plaintiff broadly asserts that "All of Defendant's alleged undisputed facts are in fact in dispute."  Doc. no. 17 at ¶ 10.  Accordingly, defendant's statement of facts are deemed admitted for summary judgment purposes.  Likewise, those facts set forth by plaintiff in her brief, but not disputed by defendant in its reply brief, will be deemed admitted.  *See* doc. no. 4, Appendix II, at *iv-v.*

[10] *See* doc. no. 15 at ¶¶ 22, 23 (Aetna's brief in support of its motion for summary judgment).  *See also* defendant's evidentiary submission, appended to doc. no. 16, Exhibit E (Excerpts from the Administrative Record), at documents bearing Bates Stamp Nos. Aetna 0113, 0415.

[11] *See* doc. no. at 15 ¶ 23.  *See also* defendant's evidentiary submission, appended to doc. no. 16, Exhibit E (Excerpts from the Administrative Record), at document bearing Bates Stamp No. Aetna 0138.

[12] *See* doc. no. at 15 ¶ 24.  *See also* defendant's evidentiary submission, appended to doc. no. 16, Exhibit E (Excerpts from the Administrative Record), at document bearing Bates Stamp No. Aetna 0253.

Plaintiff worked at an entity known as Surgical Associates before beginning her employment with Saint Barnabas.[13]  Plaintiff claims that she contracted Hepatitis C while an employee of Surgical Associates.[14]   As a result of a workers' compensation claim against Surgical Associates, plaintiff received a lump sum settlement of $30,000 in 2001.[15]

## B.   The Saint Barnabas Long-Term Disability Plan

Saint Barnabas provides its employees with various employee welfare benefits, including long-term disability insurance coverage.[16]  Its employee welfare benefits plan ("the Plan") is funded through a Group Accident and Health Insurance Policy, Group Policy GP-697775 ("the Policy").[17]   Aetna issued the Policy, and it has the discretionary authority to interpret the terms of the Plan and to determine whether and to what extent employees are entitled to benefits.[18]   However, Saint

---

[13] *See id.* at ¶ 20.  *See also* defendant's evidentiary submission, appended to doc. no. 16, Exhibit E (Excerpts from the Administrative Record), at documents bearing Bates Stamp Nos. Aetna 0406, 0416.

[14] *Id.*

[15] *See* doc. no. 15 at ¶ 29.  *See also* defendant's evidentiary submission, appended to doc. no. 16, Exhibit E (Excerpts from the Administrative Record), at documents bearing Bates Stamp Nos. Aetna 0406-0408.

[16] *See* doc. no. 15 at ¶ 1.  *See also* defendant's evidentiary submission, appended to doc. no. 16, Exhibit 1 (Third Affidavit of Annemarie Barden), at ¶ 4.

[17] *Id.*

[18] *See* doc. no. 15 at ¶ 4.  *See also* defendant's evidentiary submission, appended to doc. no. 16, Exhibit A (Excerpts from the Group Accident and Health Insurance Policy), at document bearing Bates Stamp No. Aetna 0555 ("Aetna is a fiduciary with complete authority to review all denied claims for benefits under this policy. . . .  In exercising such fiduciary responsibility, Aetna shall have

-5-

Barnabas provided its employees, including plaintiff, with a summary of the Plan, which it calls the "Benefits On Call Benefit Program Summary Plan Description" ("Summary Plan Description").[19]   The Summary Plan Description states that it is designed to provide Saint Barnabas employees with information about their benefits "in easy-to-understand language."[20]   The Policy and the Plan are governed by ERISA.[21]

With respect to long-term disability coverage, the Policy incorporates a Certificate of Coverage and two Summaries of Coverage.[22]   The two long-term disability coverages available under the Policy are (1) basic long-term disability coverage and (2) buy-up long-term disability coverage.[23]   The Summary of Coverage for the basic long-term disability coverage states that a participant is

---

discretionary authority to: determine whether and to what extent employees and beneficiaries are entitled to benefits; and construe any disputed or doubtful terms of this policy.")

[19] *See* doc. no. 15 at ¶ 17.   *See also* defendant's evidentiary submission, appended to doc. no. 7 (Defendant's Opposition to Plaintiff's Motion to Remand), Exhibit 1 (Declaration of Patrick C. Donahue), at ¶¶ 3-4.

[20] *See* defendant's evidentiary submission, appended to doc. no. 7 (Defendant's Opposition to Plaintiff's Motion to Remand), Exhibit 1 (Declaration of Patrick C. Donahue), at Exhibit A (Excerpts of the SPD), at page 5.

[21] *See* doc. no. 15 ¶ 2.   *See also* doc. no. 11 at page 21 (Memorandum Opinion holding that "the disability plan" in the instant dispute, "including the primary and optional buy-up long term disability coverage is governed by ERISA.").

[22] Doc. no. 15 at ¶ 3.   *See also* defendant's evidentiary submission, appended to doc. no. 16, Exhibit 1 (Third Affidavit of Annemarie Barden), at ¶ 5.

[23] *See* doc. no. at 15 ¶ 5.   *See also* defendant's evidentiary submission, appended to doc. no. 16, Exhibit 1 (Third Affidavit of Annemarie Barden), at ¶ 9.

eligible for the basic long-term disability option only if the participant has "not elected to contribute for monthly managed disability benefit provided under this Plan, which is the buy-up long-term disability coverage."[24]  Thus, a participant of the Plan may not be enrolled in both the basic long-term disability coverage and the buy-up long-term disability coverage.[25]

Plaintiff, as an employee of Saint Barnabas, enrolled in the buy-up long-term disability coverage.[26]  Under the buy-up long-term disability option, an amount — determined by the participant's employer and deducted each month from the participant's paycheck — goes toward the cost of the participant's insurance coverage.[27]  A participant, under this opinion, is entitled to a monthly managed benefit of "60% of the first $8,333 or $5,000" of his or her pre-disability earnings.[28]

---

[24] Doc. no. 15 at ¶ 8.  *See also* defendant's evidentiary submission, appended to doc. no. 16, Exhibit B (Summary of Coverage 4A), at document bearing Bates Stamp No. Aetna 0036.

[25] *See* doc. no. 15 at ¶ 6.  *See also* defendant's evidentiary submission, appended to doc. no. 16, Exhibit 1 (Third Affidavit of Annemarie Barden), at ¶ 11.

[26] *See* doc. no. 15 at ¶ 22.  *See also* defendant's evidentiary submission, appended to doc. no. 16, Exhibit E (Excerpts from the Administrative Record), at document bearing Bates Stamp No. Aetna 0569.

[27] *See* doc. no. 15 at ¶ 7.  *See also* defendant's evidentiary submission, appended to doc. no. 16, Exhibit C (Summary of Coverage 4B), at document bearing Bates Stamp No. Aetna 0002 ("Your contributions toward the cost of this coverage will be deducted from your pay and are subject to change.  The rate of any required contributions will be determined by your Employer.").

[28] Doc. no. 15 at ¶ 9.  *See also* defendant's evidentiary submission, appended to doc. no. 16, Exhibit C (Summary of Coverage 4B), at document bearing Bates Stamp No. Aetna 0004.

However, the amount of the participant's monthly long-term disability benefit may be reduced by income benefits that he or she receives from other sources, including "[d]isability, retirement, or unemployment benefits required or provided for under any law of a government."[29]   The Policy's Certificate of Coverage provides that "[i]f other income benefits are payable for a given month:   The monthly benefit payable under this Plan for that month will be the lesser of:   the Monthly Benefit; and the Maximum Monthly Benefit; minus all other income benefits."[30]   The Certificate of Coverage further states that examples of "other income benefits" are "[b]enefits under the Federal Social Security Act" and workers' compensation benefits.[31]

As to workers' compensation benefits, the Certificate of Coverage states that "other income benefits" includes:

> Temporary or permanent partial or total disability benefits under any state or federal workers' compensation law or any like law, which are meant to compensate the worker for any one or more of the following: loss of past or future wages; impaired earning capacity; lessened ability

---

[29] *See* doc. no. 15 at ¶ 10.   *See also* defendant's evidentiary submission, appended to doc. no. 16, Exhibit D (Certificate of Coverage), at document bearing Bates Stamp No. Aetna 0017.

[30] *See* doc. no. 15 at ¶ 10.   *See also* defendant's evidentiary submission, appended to doc. no. 16, Ex. D (Certificate of Coverage), at document bearing Bates Stamp No. Aetna 0016.

[31] Doc. no. 15 at ¶ 12.   *See also* defendant's evidentiary submission, appended to doc. no. 16, Exhibit D (Summary of Coverage 4B), at documents bearing Bates Stamp Nos. Aetna 0017-0018.

to compete in the open labor market; any degree of permanent impairment; and any degree of loss of bodily function or capacity.[32]

The Plan specifically provides that "Lump Sum Payments from Workers' Compensation" are deducted as follows:

> That part of the lump sum payment that is for disability will be counted, even if it is not specifically apportioned or identified as such. This will be done if it is or is not the result of a compromise, settlement, award, or judgment.  If there is not proof acceptable to Aetna as to what that part is, 50% will be deemed to be for disability.

> This amount will be broken down to a period of time equal to the months of your expected remaining lifetime.  If the lump sum payment is tied to a specific period, the period of time will start on the same date as the period for which the lump sum payment is made.  If the lump sum payment is not tied to a specific period, the period of time will start on the date that the lump sum payment is made.[33]

"Periodic payments," such as Social Security disability income payments, are to be deducted after they have been "broken down to monthly payments."[34]

The Certificate of Coverage provides that participants must send to Aetna copies of any documents "showing the effective dates and the amounts of other income benefits" received by the participant.[35]  If a participant fails to "furnish proof

---

[32] Doc. no. 15 at ¶ 11.  *See also* defendant's evidentiary submission, appended to doc. no. 16, Exhibit D (Summary of Coverage 4B), at document bearing Bates Stamp No. Aetna 0017.

[33] Doc. no. 15 at ¶ 13.  *See also* defendant's evidentiary submission, appended to doc. no. 16, Exhibit D (Certificate of Coverage), at document bearing Bates Stamp No. Aetna 0019.

[34] Doc. no. 15 at ¶ 14.  *See also* defendant's evidentiary submission, appended to doc. no. 16, Exhibit D (Certificate of Coverage), at document bearing Bates Stamp No. Aetna 0019.

[35] Doc. no. 15 at ¶ 15.  *See also* defendant's evidentiary submission, appended to doc. no. 16, Exhibit D (Certificate of Coverage), at document bearing Bates Stamp No. Aetna 0020.

of other income benefits," Aetna may "suspend or adjust [the participant's] benefits by the estimated amount of such other income benefits."[36]

## C.   Aetna's Calculation of Plaintiff's Monthly Managed Benefit

In calculating plaintiff's monthly managed benefit, Aetna classified plaintiff's Social Security disability income payments and her workers' compensation award from Surgical Associates as "other income benefits."[37]  Accordingly, Aetna lessened the amount of plaintiff's monthly managed benefit by the monthly breakdown of these "other income benefits."

In a letter dated April 5, 1999, Aetna informed plaintiff that her monthly managed disability benefit would be equal to 60% of her pre-disability earnings less the amount of her other income.[38]  The April 5, 1999, letter asserts that the information plaintiff provided to Saint Barnabas "states that you are presently not eligible to receive other income."[39]  However, in April of 2000, Aetna learned that plaintiff began receiving Social Security disability income benefits on March 1,

---

[36] Doc. no. 15 at ¶ 16.  *See also* defendant's evidentiary submission, appended to doc. no. 16, Exhibit D (Certificate of Coverage), at document bearing Bates Stamp No. Aetna 0021.

[37] *See* doc. no. 15 at ¶¶ 28, 31.  *See also* defendant's evidentiary submission, appended to doc. no. 16, Exhibit E (Excerpts of the Administrative Record), at documents bearing Bates Stamp Nos. Aetna 0406-0409.

[38] *See* doc. no. 15 at ¶ 25.  *See also* defendant's evidentiary submission, appended to doc. no. 16, Exhibit E (Excerpts of the Administrative Record), at documents bearing Bates Stamp Nos. Aetna 0253-0255.

[39] Defendant's evidentiary submission, appended to doc. no. 16, Exhibit E (Excerpts of the Administrative Record), at document bearing Bates Stamp No. Aetna 0254.

1999.[40]   In a letter dated April 18, 2000, Aetna informed plaintiff that, in light of

those benefits, Aetna had overpaid her monthly managed disability benefit since

April 1999.[41]   In the letter Aetna stated that plaintiff owed Aetna $7,216.83, and that

her monthly managed benefit would be lessened by the amount of her monthly

Social Security income benefits.[42]

　　　In a letter dated May 25, 2004, Aetna informed plaintiff that it had recently

learned that she also received a workers' compensation indemnity payment during

August of 2001.[43]   Accordingly, Aetna stated that plaintiff's "long term disability

plan requires that we decrease your monthly benefit by the amount of your

workers['] compensation benefit beginning September 1, 2001, over a period of 60

months."[44]   On May 28, 2004, plaintiff requested review of Aetna's determination

of her monthly managed benefit.[45]   Plaintiff specifically disagreed with Aetna's

---

[40] Doc. no. 15 at ¶ 27.  *See also* defendant's evidentiary submission, appended to doc. no. 16, Exhibit E (Excerpts of the Administrative Record), at document bearing Bates Stamp No. Aetna 0249.

[41] Doc. no. 15 at ¶ 28.  *See also* defendant's evidentiary submission, appended to doc. no. 16, Exhibit E (Excerpts of the Administrative Record), at documents bearing Bates Stamp Nos. Aetna 0249-0250.

[42] Doc. no. 15 at ¶ 28.  *See also* defendant's evidentiary submission, appended to doc. no. 16, Exhibit E (Excerpts of the Administrative Record), at document bearing Bates Stamp No. Aetna 0250.

[43] Doc. no. 15 at ¶ 31.  *See also* defendant's evidentiary submission, appended to doc. no. 16, Exhibit E (Excerpts of the Administrative Record), at document bearing Bates Stamp No. Aetna 0183.

[44] *Id.*

[45] *See* doc. no. 15 at ¶ 32.  *See also* defendant's evidentiary submission, appended to doc. no. 16, Exhibit E (Excerpts of the Administrative Record), at document bearing Bates Stamp No. Aetna 0178.

offset of her workers' compensation award.[46]   On May 12, 2005, Aetna responded to plaintiff's request for review and rendered its "final decision" regarding plaintiff's claim for additional benefits.[47]   In the May 12, 2005 letter, Aetna states that, due to plaintiff's lump sum workers' compensation award and her expected lifetime of 80.67 years, $25.21 a month was properly offset from her monthly managed benefit since August 21, 2001, the date the lump-sum payment was made.[48]

Plaintiff filed this lawsuit claiming that "she has been shorted benefits from an Aetna Long Term disability policy."[49]   Plaintiff claims that, under the terms of her long-term disability coverage, "[she] was to receive a benefit equal to 60% of her basic monthly earnings over $833, up to monthly maximum [long-term disability] benefits of $5000."[50]   Plaintiff further claimed that "[she] has been shorted about $821.53 per month since 1999 or approximately 91 months to date."[51]

---

[46] *Id.*

[47] Doc. no. 15 at ¶ 34.  *See also* defendant's evidentiary submission, appended to doc. no. 16, Exhibit E (Excerpts of the Administrative Record), at documents bearing Bates Stamp Nos. Aetna 0406-0409.

[48] *See* defendant's evidentiary submission, appended to doc. no. 16, Exhibit E (Excerpts of the Administrative Record), at documents bearing Bates Stamp Nos. 0406-0409.

[49] Doc. no. 1 (Notice of Removal), Ex. A (State Court Complaint), at ¶ 6.

[50] *Id*. at ¶ 10.

[51] *Id.*

Aetna acknowledges that several of its communications to plaintiff contained mistakes, which it describes as minor.[52]  For example, in a letter dated February 27, 2006, Aetna erroneously suggested that plaintiff was entitled to $694.33 in monthly long-term disability benefits.[53]  Further, in a letter dated July 25, 2006, Aetna erroneously referred to language in Summary of Coverage 5B, which governs Aetna's basic long-term disability coverage, and not Summary of Coverage 4B, which governs Aetna's buy-up long-term disability coverage.[54]

## III. DISCUSSION

As a threshold matter, the court must determine the appropriate standard for reviewing Aetna's calculation of plaintiff's long-term disability benefits because ERISA does not specify the standard applicable to the decisions of a plan administrator or fiduciary.  *See Jordan v. Metropolitan Life Insurance Co.*, 205 F. Supp. 2d 1302, 1305 (M.D. Fla. 2002) (citing, *e.g.*, *Marecek v. BellSouth Telecommunications*, 49 F.3d 702, 705 (11th Cir. 1995) (other citation omitted)).

The Supreme Court held in *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101 (1989), that "a denial of benefits . . . is to be reviewed under a *de novo* standard

---

[52] *See* doc. no. 15 at ¶ 33.

[53] *Id.*  *See also* defendant's evidentiary submission, appended to doc. no. 16, Exhibit E (Excerpts of the Administrative Record), at documents bearing Bates Stamp Nos. 0587-0588.

[54] *See* doc. no. 15 at ¶ 33.  *See also* defendant's evidentiary submission, appended to doc. no. 16, Exhibit E (Excerpts of the Administrative Record), at documents bearing Bates Stamp Nos. 0571-0572.

unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Id.* at 115. Pivoting off the *Bruch* decision, the Eleventh Circuit has promulgated three standards of review applicable to the decisions of a claim administrator: "(1) *de novo* where the plan does not grant the administrator discretion; (2) arbitrary and capricious [where] the plan grants the administrator discretion; and (3) heightened arbitrary and capricious where there is a conflict of interests." *Buckley v. Metropolitan Life Insurance Co.*, 115 F.3d 936, 939 (11th Cir. 1997).[55] Here, the Plan grants the claims administrator, Aetna, the discretion to construe the terms of the Plan, and to determine whether and to what extent employees are entitled to benefits.[56] Accordingly, the "arbitrary and capricious" standard applies.

   To determine whether the administrator's decision was arbitrary and capricious, the court must first "[a]pply the *de novo* standard to determine whether the claim administrator's benefits-denial decision is 'wrong' (*i.e.,* the court disagrees with the administrator's decision)." *Williams v. Bellsouth Telecommunications, Inc.*, 373 F.3d 1132, 1138 (11th Cir. 2004) (citing *HCA*

---

[55] These standards apply not only to an administrator's interpretation of a plan term, but also to factual decisions of an administrator. *See Shaw v. Connecticut General Life Insurance Co.,* 353 F.3d 1276, 1284-85 (11th Cir. 2003).

[56] *See* doc. no. 1 at ¶ 4.

*Health Services of Georgia, Inc. v. Employers Health Insurance Co.,* 240 F.3d 982, 993 n.23 (11th Cir. 2001)).  A court "conducting *de novo* review . . . is bound by the provisions of the documents establishing an employee benefit plan without deferring to either party's interpretation.  *Moon v. Am. Home Assurance Co.*, 888 F.2d 86, 89 (11th Cir. 1989) (internal quotation marks and citations omitted).  If the decision was not "wrong," the inquiry is ended and the administrator's decision will be affirmed.  *Williams,* 373 F.3d at 1138.

If the administrator's decision is "wrong," then, under the arbitrary and capricious standard of review, the court next must "determine whether 'reasonable grounds' supported it."  *Id.* (citation omitted).  Stated differently,

> [w]hen conducting a review of an ERISA benefits denial under an arbitrary and capricious standard (sometimes used interchangeably with an abuse of discretion standard), the function of the court is to determine whether there was a reasonable basis for the decision, based upon the facts as known to the administrator at the time the decision was made.

*Jett v. Blue Cross and Blue Shield of Alabama, Inc.,* 890 F.2d 1137, 1139 (11th Cir. 1989) (citations omitted).  A reasonable decision will be upheld as not being arbitrary and capricious "even if there is evidence that would support a contrary decision."  *Id.* at 1140.

## A.   Aetna's Calculation of Plaintiff's Long-Term Disability Benefits

Aetna argues that summary judgment is appropriate because, it says, it correctly calculated plaintiff's long-term disability benefits. Aetna asserts that under the Plan's buy-up managed long-term disability option that plaintiff selected, plaintiff is entitled to a monthly managed long-term disability benefit equal to "60% of the first $8,333" of her pre-disability earnings, minus any "other income benefits" that she receives.[57] Aetna notes that the Plan defines "other income benefits" to include "benefits under any state or federal workers' compensation law or any like law" and "[b]enefits under the Federal Social Security Act."[58] Aetna asserts that to deduct a lump sum workers' compensation award from plaintiff's monthly managed long-term disability benefit, Aetna (1) deducts 50% of the award if the payment is not specifically apportioned toward disability, and (2) breaks the award down and deducts it over a period of time equal to the months of plaintiff's expected remaining lifetime.[59]

Aetna's calculation of monthly managed benefit starts with plaintiff's monthly pre-disability earnings of $2,202.22. Aetna then calculates that 60% of $2,202.22 is

---

[57] Defendant's evidentiary submission, appended to doc. no. 16, Exhibit C (Summary of Coverage 4B), at documents bearing Bates Stamp Nos. Aetna 0004, 0005, and 0015.

[58] *Id*. at documents bearing Bates Stamp Nos. Aetna 0017-0018.

[59] *See id*. at document bearing Bates Stamp No. Aetna 0019.

$1,321.33. Aetna then deducts plaintiff's monthly Social Security disability income benefits in the amount of $627 from $1,321.33, which equals $694.33.

Aetna also deducts part of plaintiff's workers' compensation award of $30,000 from her monthly pre-disability earnings.[60] Aetna first credits plaintiff with the $6,000 in attorneys' fees and $300 in medical fees that she incurred while pursuing her workers' compensation claims: *i.e.*, $30,000 - $6,300 = $23,700. [61] According to the Certificate of Coverage, Aetna then deems 50% of plaintiff's remaining workers' compensation award of $23,700 ($11,850) to be for disability.[62] Aetna then divides $11,850 by the months of plaintiff's expected remaining lifetime. Based on plaintiff's expected lifetime of 80.67 years, Aetna offsets $25.51 each month from plaintiff's monthly managed benefit.[63] Aetna subtracts $25.21 from $694.33, which equals $669.12.[64] Thus, Aetna calculates that under the buy-up

---

[60] *See* doc. no. 15 at page 15.

[61] *See* doc. no. 15 at ¶ 36. *See also* Defendant's evidentiary submission, appended to doc. no. 16, Exhibit E (Excerpts of the Administrative Record), at document bearing Bates Stamp No. 0408.

[62] *See* doc. no. 15 at ¶ 37. *See also* Defendant's evidentiary submission, appended to doc. no. 16, Exhibit E (Excerpts of the Administrative Record), at document bearing Bates Stamp No. 0408.

[63] See doc. no. 15 at ¶ 38. *See also* Defendant's evidentiary submission, appended to doc. no. 16, Exhibit E (Excerpts of the Administrative Record), at document bearing Bates Stamp No. 0408.

[64] *See* doc. no. 15 at ¶ 39. *See also* Defendant's evidentiary submission, appended to doc. no. 16, Exhibit E (Excerpts of the Administrative Record), at document bearing Bates Stamp No. 0408.

long-term disability plan plaintiff is entitled to a net monthly managed benefit in the amount of $669.12.[65]

Aetna asserts that plaintiff's contention that her workers' compensation award should not be offset from her monthly managed benefit has no merit. Specifically, Aetna contends the fact that plaintiff's workers' compensation award resulted from a disability for Hepatitis C — which she contracted before working at Saint Barnabas — does not exempt the award from the Plan's definition of "other income benefits."    Aetna notes that the Plan's definition of "other income" applicable to workers' compensation awards is very broad and encompasses any and all awards for

> [t]emporary or permanent partial or total disability benefits under any state or federal workers' compensation law or any like law, which are meant to compensate the worker for any one or more of the following: loss of past or future wages; impaired earning capacity; lessened ability to complete in the open labor market; any degree of permanent impairment; and any degree of loss of bodily function or capacity.[66]

Aetna further contends that its interpretation and application of the Plan's provision for "other income benefits" is based not only on the language of the Certificate of Coverage, but also on the purpose behind "other income" provisions

---

[65] *Id.*

[66] Defendant's evidentiary submission, appended to doc. no. 16, Exhibit C (Summary of Coverage 4B), at document bearing Bates Stamp No. Aetna 0017.

in plans for disability benefits.   Aetna asserts that disability benefits are not
designed to replace all the earnings that an individual has lost due to his or her
disability, but only a percentage of those lost earnings.   Aetna further asserts that
Saint Barnabas provides a benefit level of 60% of a participant's pre-disability
earnings as a balance between concern for the welfare of employees and concern for
a properly motivated workforce.   If "other income" is not offset from the disability
benefit, Aetna notes that a participant could receive more than the 60% of a
participant's pre-disability earnings.

Plaintiff's brief in response to Aetna's motion for summary judgment states
that she has two long-term disability plans from Aetna and that there is no evidence
indicating that she selected the buy-up long-term disability coverage.[67]   Plaintiff
asserts that Saint Barnabas automatically provides all employees with basic long-
term disability coverage and that employees may also purchase buy-up long-term
disability coverage for additional coverage.   According to plaintiff, "[o]ne plan (the
Group Basic [long-term disability]) provides 60% up [sic] income up to $833 with
offsets and the [buy-up long-term disability coverage] is for additional income
protection of 60% of income over $833.00 up to monthly maximum earnings of
$8,333.00 including the Basic [long-term disability] and primary Social Security

---

[67] *See* Doc. no. 17 at ¶ 16.

Disability Income."[68]   Plaintiff contends that she has "every reason" to believe that she has two long-term disability plans because, she says, "[d]efendant has either failed to provide policy information or has provided so many policy excerpts, wrong policy pages, misstatements, contradicting information and documents."[69]   Plaintiff further asserts that the Summary Plan Description provided by Saint Barnabas does not warn an employee that his or her basic long-term disability coverage would be "cancelled" if he or she signs up for buy-up long-term disability coverage.[70]

Aetna replies that plaintiff has neither produced any evidence indicating that she has two long-term disability plans, nor rebutted its calculation of her long-term disability benefit based upon the terms of any Plan documents.[71]   Aetna notes that the Eleventh Circuit has "'consistently held that conclusory allegations without specific supporting facts have no probative value.'"  *Leigh v. Warner Bros., Inc.*, 212 F.3d 1210, 1217 (11th Cir. 2000) (quoting *Evers v. General Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985)).  Moreover, "[a] party opposing summary judgment may not rest upon the mere allegations or denials in its pleadings.  Rather, its responses, either by affidavits or otherwise as provided by the rule, must set forth

---

[68] Doc. no 17 at ¶ 4.

[69] Doc. no. 17 at ¶ 5.

[70] Doc. no. 17 at page 20.

[71] *See* doc. no. 18 at page 5.

specific facts showing that there is a genuine issue for trial." *Walker v. Darby*, 911 F.2d 1573, 1576 -77 (11th Cir. 1990).

Aetna further asserts that the Summary Plan Description does not support plaintiff's "unfounded beliefs," but actually confirms that there is only one managed long-term disability plan. Aetna notes that the Summary Benefit Plan explains that the "Basic [long-term disability] . . . benefit replaces 60% of the first $833 of [a participant's] basic monthly earnings" while the "Optional [long-term disability]" benefit replaces "60% of [a participant's] basic monthly earnings over $833, up to a monthly maximum earnings of $8,333." Lastly, Aetna asserts that plaintiff has not presented any evidence that she relied on the Summary Plan Description. Aetna notes that the Eleventh Circuit "has repeatedly held that in order 'to prevent an employer from enforcing the terms of a plan that are inconsistent with those of the plan summary, a beneficiary must prove reliance on the summary.'" *Heffner v. Blue Cross and Blue Shield of Alabama, Inc.*, 443 F.3d 1330, 1340 (11th Cir. 2006) (quoting *Branch v. G. Bernd Co.*, 955 F.2d 1574, 1579 (11th Cir. 1992)).

Plaintiff's arguments that she has two long-term disability coverages from Aetna are unpersuasive and unsupported by any evidence. Plaintiff's "Saint Barnabas Health Care System Benefits Confirmation Statement" dated July 23, 1998, states that plaintiff elected to purchase optional buy-up long-term disability

coverage.[72]  The Plan's governing documents show that a Saint Barnabas employee cannot be simultaneously covered by both the basic long-term disability coverage *and* the buy-up long-term disability coverage.  The Summary of Coverage for the buy-up long-term disability coverages clearly states than an employee is eligible for that coverage if he or she "*ha[s] elected* to contribute for the monthly managed disability benefit under this Plan."[73]  An employee is eligible for the basic long-term disability coverage only if he or she "*ha[s] not elected* to contribute for the monthly managed disability benefit provided under this Plan."[74]  Plaintiff's response to Aetna's motion for summary judgment asserts that "Aetna has received $2.20 from each of Plaintiff's payroll checks for the Buy Up [long-term disability coverage]."[75]  Because Plaintiff elected to enroll in the buy-up long-term disability coverage and she contributed to the coverage, she enrolled only in the buy-up long-term disability coverage and not the basic long-term disability coverage.

Plaintiff's assertion that "Aetna has conducted itself in an arbitrary and capricious manner and has display [sic] and [sic] clear abuse of discretion regarding

---

[72] *See* defendant's evidentiary submission, appended to doc. no. 16, Exhibit E (Excerpts from the Administrative Record), at document bearing Bates Stamp No. Aetna 0569.

[73] Defendant's evidentiary submission, appended to doc. no. 16, Exhibit C (Summary of Coverage 4B), at document bearing Bates Stamp No. Aetna 0001 (emphasis added).

[74] Defendant's evidentiary submission, appended to doc. no. 16, Exhibit B (Summary of Coverage 4A), at document bearing Bates Stamp No. Aetna 0036 (emphasis added).

[75] Doc. no. 17 at ¶ 11.

plaintiff's policies" is also unavailing.[76]   Plaintiff did not submit evidence disputing that the documents Aetna authenticated as the controlling Plan documents are, in fact, the controlling Plan documents or that Aetna misconstrued the Plan documents to calculate her long-term disability benefits.   "'[T]o defeat [Aetna's] properly supported motion for summary judgment[,]'" plaintiff "'must present affirmative evidence" that "show[s] that there is a genuine issue for trial.'"  *Tidmore Oil Co. v. BP Oil Co./Gulf Prod. Div.*, 932 F.2d 1384, 1387 (11th Cir. 1991) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986)).   Simply, plaintiff has failed to present any affirmative evidence that Aetna's calculation of plaintiff's monthly managed benefits is wrong.   Even if Aetna's calculation of benefits could be considered "wrong," however, Aetna's decision was not "arbitrary and capricious," because it had a reasonable basis for its calculation of plaintiff's monthly managed benefits.

## III.  CONCLUSION

In accordance with the foregoing, summary judgment is due to be granted on plaintiff's ERISA claim because she failed to show that a genuine issue of material fact exists in regard to Aetna's calculation of her long-term disability benefits.   An appropriate order will be entered contemporaneously herewith.

---

[76] Plaintiff's brief at p. 21.

DONE this 28th day of August, 2008.

_____
United States District Judge